**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANNE CRIDER,**

                              **Plaintiff,**

        **vs.**                                                **9:25-CV-629**
                                                               **(MAD/PJE)**

**ANNE MARIE MCGRATH,**
**CAROLE MOORES,**
**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONS AND COMMUNITY**
**SUPERVISION, and THE STATE OF NEW YORK,**

                              **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**PRISONERS' LEGAL SERVICES**          **ANDREW A. STECKER, ESQ.**
**OF NEW YORK**
14 Lafayette Square, Suite 510
Buffalo, New York 14203
Attorney for Plaintiff

**DECHERT LLP**                              **DAVID KOTLER, ESQ.**
Three Bryant Park                            **HARNELLE ST CLOUD, ESQ.**
1095 Avenue of the Americas
New York, New York 10036
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**              **BRIAN W. MATULA, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

1

Plaintiff Anne Crider commenced this action on May 16, 2025, alleging "discriminatory exclusion from the benefits of the Proximity-to-Minor Children ("PMC") program" during her incarceration at Albion Correctional Facility.  Dkt. No. 1.  The original complaint names four Defendants: the New York State Department of Corrections and Community Supervision ("DOCCS"); Anne Marie McGrath, DOCCS Deputy Commissioner of Strategic Planning and Population Management, in her official capacity; Carole Moores, DOCCS Deputy Commissioner for Health Services and Chief Medical Officer, in her official capacity; and the State of New York.  *See id.* at ¶¶ 10-19.  The complaint contains two discrimination claims: one under the Americans with Disabilities Act ("ADA"), and one under the Rehabilitation Act ("RA").  *See id.* at ¶¶ 51-57.  It also seeks monetary damages, a declaration that Defendants' conduct was unlawful, and a transfer to a correctional facility closer to her minor child.  *See id.* at 8-9.

On August 6, 2025, Defendants filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Dkt. No. 15.  Defendants argue that Plaintiff's claims for injunctive and declaratory relief are moot because she was transferred to Bedford Hills Correctional Facility, which is near her child, after filing her complaint.  *See* Dkt. No. 15-1 at 5; Dkt. No. 15-2 at ¶ 2.  They also contend that Plaintiff's claim for declaratory relief is barred because it relies solely on past conduct.  *See* Dkt. No. 15-1 at 5.  As for Plaintiff's claims for monetary damages, Defendants argue that the complaint should be dismissed for failure to state a claim.  *See id.* at 6.  Moreover, according to Defendants, Plaintiff's claims against any Defendants in their official capacities are duplicative of her claims against DOCCS.  *See id.*

On September 17, 2025, Plaintiff opposed Defendants' motion.  *See* Dkt. No. 18.  Within her opposition, she cross-moved for leave to file an amended and supplemental complaint.[1]  *See*

---

[1] The Court hereinafter refers to the proposed pleading as the "proposed amended complaint."

*id.* Plaintiff wants to add two new Defendants: DOCCS Classification Analysts Christine M. Story and Nicole L. Danzy, in their individual capacities. *See* Dkt. No. 18-3 at ¶¶ 18-21.[2] Story and Danzy work in the DOCCS Office of Classification and Movement, which McGrath oversees. *See id.* at ¶ 56. Plaintiff also seeks to add an ADA retaliation claim against all Defendants, *see id.* at ¶¶ 101-03; an RA retaliation claim against McGrath, Moores, and DOCCS, *see id.* at ¶¶ 104-05; an equal protection claim pursuant to 42 U.S.C. § 1983 against Story, *see id.* at ¶¶ 106-07; and a First Amendment retaliation claim pursuant to § 1983 against Story and Danzy, *see id.* at ¶¶ 108-09. The proposed amended complaint also removes New York State as a Defendant on the RA discrimination claim. *See id.* at ¶¶ 96-100. Finally, the proposed amended complaint requests injunctive relief in the form of Plaintiff's transfer to Taconic Correctional Facility, a different prison near her child, and "equal access to prison programs and services and the benefits of April's Law [also known as the Proximity to Minor Children Act]." *Id.* at 18.

On September 24, 2025, Defendants filed a brief in opposition to the cross-motion and in further support of their motion to dismiss. *See* Dkt. No. 19. With regard to the original complaint, Defendants contend that Plaintiff "fail[ed] to point to allegations that would allow the claims . . . to proceed or demonstrate how the relief requested . . . was not rendered moot by her transfer to the facility closer to her child." *Id.* at 4. As for the new claims that Plaintiff seeks leave to assert, Defendants argue that amending the complaint would be futile for numerous reasons, including Plaintiff's failure to exhaust her administrative remedies and failure to state a cause of action. *See id.* at 12-18.

---

[2] The Court cites to the redlined version of the proposed amended complaint because it shows the differences between the proposed pleading and the original. *Compare* Dkt. No. 1, *with* Dkt. No. 18-3. Plaintiff also filed a version of the proposed pleading without redlining, and its paragraph numbers match those of the redlined version. *See* Dkt. No. 18-2.

Subsequently, on November 6, 2025, Defendants filed a supplemental brief regarding a change in circumstances. *See* Dkt. No. 23. Defendants explain that in October 2025, Plaintiff was transferred to general population at Taconic Correctional Facility, the same facility she requests a transfer to in her proposed amended complaint. *See id.* at 3-4; Dkt. No. 23-1 at ¶¶ 5-6. As a result, Defendants argue that Plaintiff's proposed transfer request is moot. *See* Dkt. No. 23 at 4-5.

For the following reasons, Defendants' motion to dismiss, Dkt. No. 15, is granted in part and denied in part, and Plaintiff's cross-motion to file an amended and supplemental complaint, Dkt. No. 18, is granted in part and denied in part.

## II. BACKGROUND

Plaintiff has been in DOCCS custody since October 26, 2022. *See* Dkt. No. 1 at ¶ 34; Dkt. No. 18-3 at ¶ 40. She was initially incarcerated at Bedford Hills Correctional Facility, approximately seventy-five miles from Monticello, New York, where her child lives. *See* Dkt. No. 1 at ¶¶ 33, 35, 37; Dkt. No. 18-3 at ¶¶ 39, 41, 43. Soon thereafter, DOCCS transferred her to Taconic Correctional Facility, which is also seventy-five miles from her child. *See* Dkt. No. 1 at ¶¶ 35, 37; Dkt. No. 18-3 at ¶¶ 41, 43. On April 6, 2023, Plaintiff was transferred from Taconic to Albion Correctional Facility in Orleans County, New York, which is nearly 300 miles from Monticello. *See* Dkt. No. 1 at ¶¶ 36-37; Dkt. No. 18-3 at ¶¶ 42-43. When Plaintiff filed her complaint, she was housed at Albion. *See* Dkt. No. 1 at ¶ 9, Dkt. No. 18-3 at ¶ 10.

After her transfer to Albion, pursuant to New York Correction Law § 72-c (also known as April's Law or the Proximity to Minor Children Act), Plaintiff requested relocation to a prison closer to her child. *See* Dkt. No. 1 at ¶¶ 2-3, 38; Dkt. No. 18-3 at ¶¶ 2-3, 44. The Act reads, in relevant part, as follows:

> In determining placement for a person in custody of the department, whenever practicable the commissioner shall place such person in the correctional institution or facility which is located in closest proximity to the primary place of residence of such person's minor child or children[,] . . . provided that such placement is suitable and appropriate, would facilitate increased contact between such person and his or her child or children, is in the best interest of such child or children, and the incarcerated parent gives his or her consent to such placement.

N.Y. CORRECT. LAW § 72-c(1). Additionally, Plaintiff alleges that DOCCS has an internal directive setting forth the necessary procedure when an individual requests such a transfer. *See* Dkt. No. 1 at ¶ 26; Dkt. No. 18-3 at ¶ 31.

Plaintiff alleges that her "application was approved, [but] DOCCS denied her requested transfer for unspecified medical reasons." Dkt. No. 1 at ¶ 4; Dkt. No. 18-3 at ¶ 4. The denial occurred on August 30, 2023, *see* Dkt. No. 1 at ¶ 39; Dkt. No. 18-3 at ¶ 45, and in her proposed amended complaint, Plaintiff claims that Defendant Story personally authorized the denial, *see* Dkt. No. 18-3 at ¶ 45. Plaintiff further alleges that medical staff at Albion acknowledged her lack of acute medical needs or limitations. *See* Dkt. No. 1 at ¶ 5; Dkt. No. 18-3 at ¶ 5. Simultaneously, Plaintiff states that she has "various chronic medical issues, including osteoarthritis, bone spurs, and venous stasis." Dkt. No. 1 at ¶ 28; Dkt. No. 18-3 at ¶ 34. According to Plaintiff, untreated osteoarthritis can cause substantial musculoskeletal limitations that affect a patient's ability to walk, stand, sit, reach, lift, bend, and work. *See* Dkt. No. 1 at ¶ 29; Dkt. No. 18-3 at ¶ 35. Her proposed amended complaint alleges that "[b]ecause of her disabilities, [Plaintiff] uses a cane for mobility and occasionally uses a rolling walker for long distances." Dkt. No. 18-3 at ¶ 36.

Plaintiff claims that DOCCS guidance staff tried to resubmit the transfer request in November 2023, and as part of that effort, a DOCCS physician stated that although Plaintiff used

a walker, she had no "medical restrictions that would prevent her from transferring to another facility." Dkt. No. 1 at ¶¶ 41-42; Dkt. No. 18-3 at ¶¶ 47-48. However, DOCCS Central Office of Classification and Movement denied the transfer request, again, stating that Plaintiff's medical needs could not be met at Taconic or Bedford Hills. *See* Dkt. No. 1 at ¶ 43; Dkt. No. 18-3 at ¶ 49. The proposed amended complaint alleges that Defendant Story was personally responsible for this decision. *See* Dkt. No. 18-3 at ¶ 49. On April 3, 2025, Plaintiff's counsel emailed Defendants McGrath and Moores to request Plaintiff's immediate transfer, but received no response. *See* Dkt. No. 1 at ¶¶ 48-49; Dkt. No. 18-3 at ¶¶ 52-53.

The proposed amended complaint includes factual allegations not present in the original complaint. It alleges that Plaintiff was referred for transfer to Taconic on May 6, 2025, shortly before she brought this action. *See* Dkt. No. 18-3 at ¶ 57. On June 11, 2025, after the complaint was filed, Defendant Danzy allegedly authorized the denial of Plaintiff's request for relocation to Taconic. *See id.* at ¶ 60. Then, Defendant Story authorized Plaintiff's transfer from general population to the Regional Medical Unit ("RMU") at Bedford Hills, purportedly for medical reasons. *See id.* at ¶ 61. Plaintiff claims that the RMU is reserved for people "who cannot reside in general population due to their medical needs." *Id.* at ¶ 62.

On June 20, 2025, staff at Albion told Plaintiff to collect her belongings and prepare for transfer. *See id.* at ¶ 63. She was transported by van to Bedford Hills and states that "[n]o other incarcerated individuals were transported with her," which is not DOCCS's usual practice. *Id.* at ¶¶ 63-64. When Plaintiff arrived at Bedford Hills, the staff seemed confused about why she was there. *See id.* at ¶ 65. After an examination, a Bedford Hills physician admitted Plaintiff to the infirmary "based only on 'impaired mobility' and a purported need to monitor her bilateral knee pain." *Id.* at ¶ 68. Plaintiff contends "[t]here was no legitimate medical reason for her admission

6

to the infirmary, which was contrary to DOCCS policy." *Id.* at ¶ 70.  Thereafter, she alleges that she was confined in an infirmary isolation cell for three weeks and denied access to her property. *See id.* at ¶ 70.

On July 11, 2025, Plaintiff was moved to the Long-Term Care ("LTC") section of the RMU.  *See id.* at ¶ 72.  She claims that LTC is reserved for people with chronic medical conditions who need daily care, and that she did not belong in LTC.  *See id.* at ¶¶ 73-74.  Plaintiff alleges that DOCCS staff kept her in LTC because she occasionally uses a walker.  *See id.* at ¶ 75.  According to Plaintiff, people housed in LTC are denied certain benefits available to the general population, such as having to eat in the RMU instead of in the mess hall, and not having the option to purchase perishable foods from the commissary and store them on ice.  *See id.* at ¶¶ 77-78, 80.  Plaintiff also alleges that she was denied a job in the Bedford Hills law library because she uses a walker, *see id.* at ¶ 85, and is not allowed to use the regular visiting room available to the general population, which has books, vending machines, and children's toys, *see id.* at ¶¶ 87-88.  Rather, Plaintiff's visitors must use a small room with "bare walls and no amenities."  *Id.* at ¶ 89.

After Plaintiff filed her cross-motion and proposed amended complaint, her physical location changed, again.  In a declaration dated November 6, 2025, a DOCCS attorney stated that Plaintiff expressed a wish to return to Albion.  *See* Dkt. No. 23-1 at ¶ 3.  The transfer occurred on September 18, 2025.  *See id.* at ¶ 4.  Subsequently, on or about October 6, 2025, Plaintiff requested a PMC transfer to Taconic.  *See id.* at ¶ 5.  DOCCS approved the transfer, and in October 2025, Plaintiff returned to Taconic.  *See id.*  She is now housed in general population at Taconic.  *See id.* at ¶ 6.

### III. DISCUSSION

**A.     Legal Standards**

*1.  Motion to Dismiss*

As a threshold matter, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)); *see Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed") (citations omitted).  Rule 12(b)(1) provides subject matter jurisdiction as a ground for a party's motion to dismiss.  *See* FED. R. CIV. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

If the Court is satisfied that it has subject matter jurisdiction, a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the "legal sufficiency" of the pleader's claim for relief.  *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, courts may still consider documents attached to the pleading as an exhibit or incorporated by reference into the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).  A court may also consider documents that are "integral" to the pleading, even if they are not physically attached or incorporated by reference.  *See id.* (quoting *Chambers*, 282 F.3d at 152-53).  Courts must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation

omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability" generally does not meet the pleading standard.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

### 2.  *Motion to Amend and Supplement Pleadings*

"Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'" *Gorman v. Covidien Sales, LLC*, No. 13-CV-6486, 2014 WL 7404071, *2 (S.D.N.Y. Dec. 31, 2014) (quoting FED. R. CIV. P. 15(a)(2)).  Accordingly, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  However, courts may deny leave to amend when amendment would be futile, and "[w]hen assessing futility, the court employs a standard comparable to that utilized in assessing a motion to dismiss under Rule 12(b)(6)." *O'Brien v. City of Syracuse*, No. 5:22-CV-948, 2024 WL 4252052, *2 (N.D.N.Y. Sept. 20, 2024) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)).  Thus, "when a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under [Rule] 12(b)(6), leave

to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim . . . ."  *Milanese*, 244 F.3d at 110 (citation omitted).

Although a filed amended complaint typically supersedes the original complaint, it does not necessarily moot a pending motion to dismiss.  *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020).  "[W]hen faced with an amended complaint, [courts] may either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading."  *Id.* (citations omitted).  This reasoning also applies when a plaintiff seeks *leave to file* an amended complaint while a motion to dismiss is pending, even if leave has not yet been granted.  *See Rourke-Rodriguez v. U.S. Dep't of Educ.*, No. 8:25-CV-738, 2025 WL 2962758, *4 (N.D.N.Y. Oct. 21, 2025) ("Given that plaintiffs moved for leave to amend their complaint while defendants' motion to dismiss was pending, the Court will consider defendants' motion in light of plaintiffs' proposed amended complaint").

In deciding which approach to take, courts consider the nature of the amendment and whether the defendants had adequate opportunity to respond to the proposed amended complaint. *See Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 274 (N.D.N.Y. 2012) ("As [the plaintiff] does not seek to add new defendants in the proposed second amended complaint, and since defendants had sufficient opportunity to respond to the proposed second amended complaint, the merits of the motion to dismiss will be considered in light of the proposed second amended complaint"); *Capuano v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 9:23-CV-1556, 2025 WL 890489, *2 (N.D.N.Y. Mar. 24, 2025) (finding no clear error with a magistrate judge's consideration of a motion to dismiss in light of the plaintiff's amended complaint, which "merely changed the form of relief sought and failed to add a proper party").

Relatedly, Federal Rule of Civil Procedure 15(d) states that courts may permit parties "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). "In the case of proposed amendments where new defendants are to be added, the Court must also look to Rule 21 of the Federal Rules of Civil Procedure, which states that a party may be added to an action 'at any time, on just terms.'" *Bradshaw v. Marshal*, No. 9:21-CV-826, 2021 WL 11745345, *4 (N.D.N.Y. Sept. 14, 2021) (quoting FED. R. CIV. P. 21). Likewise, "leave to supplement should be given 'absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility.'" *Id.* (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000)).

Here, because Defendants have responded to Plaintiff's cross-motion and proposed amended complaint with substantive legal arguments, *see* Dkt. No. 19, the Court considers the motion to dismiss and subsequent briefing in light of the proposed amended complaint, *see, e.g.*, *Rourke-Rodriguez*, 2025 WL 2962758, at *1, *4; *Hamzik*, 859 F. Supp. 2d at 271, 274.

**B.    Injunctive and Declaratory Relief**

In both their motion to dismiss and response to Plaintiff's cross-motion, Defendants argue that Plaintiff's request for injunctive relief in the form of her desired transfer is moot. *See* Dkt. No. 15-1 at 7; Dkt. No. 19 at 10. Plaintiff's proposed amended complaint asks the Court to order her transfer to general population at Taconic, "with equal access to prison programs and services and the benefits of April's Law." Dkt. No. 18-3 at 18. Defendants also argue that Plaintiff's request for a declaration that Defendants' conduct was unlawful is barred because no live controversy remains, and the declaratory relief would focus solely on past conduct. *See* Dkt. No. 15-1 at 8; Dkt. No. 19 at 10. In her opposition brief and cross-motion, Plaintiff argues that these

claims are not moot because: (1) Defendants continued to keep her "in a segregated medical unit,"[3] and (2) Defendants' "voluntary cessation" of the challenged conduct by moving her to a facility near her child did not eradicate Plaintiff's harm or provide assurance that further injury would not occur.  Dkt. No. 18-1 at 16.

"To establish standing in federal court, any party bringing a lawsuit must allege an actual case or controversy." *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974)).  A plaintiff must show three things to establish standing: "(1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." *Id.* (citing *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663 (1993)).  On the first prong, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury[,] . . . but must show a likelihood that he or she will be injured in the future." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)).  Relatedly, "[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).  Thus, even if a plaintiff's claim is viable at the outset of litigation, a change in circumstances may extinguish any live controversy.  *See id.* at 72.

The proposed amended complaint alleges numerous denials of transfer requests, but DOCCS eventually transferred Plaintiff to the placement she wanted: general population at Taconic.  *See* Dkt. No. 23-1 at ¶ 6.  The proposed amended complaint does not allege any facts

---

[3] At the time Plaintiff filed her cross-motion, she was not yet housed in general population. *See* Dkt. No. 18-1 at 16.

establishing a likelihood of removal from that placement, and Plaintiff has not provided the Court with any new information that would suggest ongoing or future injury since her relocation to general population at Taconic. However, Plaintiff argues that Defendants' "voluntary cessation" of the challenged conduct does not moot any of her claims. Dkt. No. 18-1 at 17-18.

The voluntary cessation doctrine provides that if a defendant voluntarily stops committing the challenged conduct, the plaintiff's claim is moot only if the defendant shows: "'(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Higbie v. James*, 795 F. Supp. 3d 307, 331 (N.D.N.Y. 2025) (quoting *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016)). Plaintiff challenges the sufficiency of Defendants' proffered evidence that the challenged conduct will not recur: an August 2025 declaration from a DOCCS attorney. *See* Dkt. No. 18-1 at 17-18 (quoting Dkt. No. 15-2 at ¶ 5). The Court notes that in November 2025, Defendants filed an additional declaration from that same attorney, confirming an absence of pending transfer requests and any indication in DOCCS's own records that Plaintiff will be transferred. *See* Dkt. No. 23-1 at ¶ 7. These declarations, without more, fall short of Defendants' hefty burden under the voluntary cessation doctrine. *See Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 242-43 (2024). Even though Plaintiff already occupies her requested placement, Defendants have failed to show that they will not remove her from that placement. It follows that Plaintiff's claims for injunctive and declaratory relief survive at the pleading stage.

Additionally, because courts have consistently held that ADA and RA claims against individual DOCCS employees in their official capacities and against the State of New York are duplicative of claims against DOCCS, *see, e.g.*, *Cabassa v. Oshier*, No. 9:11-CV-1237, 2013 WL 1183296, *10 (N.D.N.Y. Mar. 21, 2013) (citing *Hallett v. N.Y. State Dep't of Corr. Servs.*, 109 F.

13

Supp. 2d 190, 199-200 (S.D.N.Y. 2000)); *Keitt v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 11-CV-855, 2015 WL 2383687, *21 (W.D.N.Y. May 19, 2015), Defendant New York State is dismissed from Plaintiff's claims for injunctive and declaratory relief.  In recognition of Plaintiff's argument that the *Ex Parte Young* exception to Eleventh Amendment immunity may eventually permit injunctive or declaratory relief as to Defendants McGrath and Moores, *see* Dkt. No. 18-1 at 18-19, the Court declines to dismiss them as Defendants on these claims, *see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (recognizing the possibility of obtaining injunctive relief against individual defendants in their official capacities, even where Eleventh Amendment immunity would otherwise bar recovery).

Accordingly, Defendants' motion to dismiss Plaintiff's claims for injunctive and declaratory relief is denied.[4]

## C.    ADA and RA Discrimination Claims

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Likewise, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  "Disability discrimination claims under these two statutes are sufficiently similar that courts lump them together for purposes of the analysis."  *Raymond v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 749 F.

---

[4] While the Court expresses no opinion as to the likelihood of success on this claim on a fully-briefed motion for summary judgment, the allegations are sufficient to survive a motion to dismiss.

Supp. 3d 290, 302 (N.D.N.Y. 2024) (citing *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)).  To plead a *prima facie* violation, Plaintiff must allege: "(1) [s]he is a qualified individual with a disability; (2) the defendant is an entity subject to the acts; [and] (3) [s]he was denied the opportunity to participate in or benefit from the entity's services, programs, or activities, or was otherwise discriminated against by reason of h[er] disability." *Id.* (citing *Wright*, 831 F.3d at 72).

The proposed amended complaint enumerates two discrimination claims for monetary damages: (1) a Title II ADA claim against Defendants McGrath, Moores, DOCCS, and the State of New York; and (2) an RA claim against Defendants McGrath, Moores, and DOCCS.  *See* Dkt. No. 18-3 at ¶¶ 90-100.  These claims were present in the original complaint, but the proposed amended complaint removes the State of New York as a Defendant on the RA claim.  *See* Dkt. No. 1 at ¶¶ 51-57; Dkt. No. 18-3 at ¶¶ 96-100.  In their motion to dismiss, Defendants assert that Plaintiff's ADA and RA discrimination claims are barred by sovereign immunity because Plaintiff fails to plead intentional discrimination.  *See* Dkt. No. 15-1 at 10.  Plaintiff argues that she has pled intentional discrimination by alleging "that she was denied a PMC transfer based explicitly on her medical status." Dkt. No. 18-1 at 20.  She contends that, "if proven," this allegation "provides direct evidence of discrimination." *Id.*

Defendants do not dispute that DOCCS, a New York State entity, is subject to the RA and Title II of the ADA.  *See Caballero v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 349 F.R.D. 45, 53-54 (N.D.N.Y. 2024) ("It is well-established that DOCCS is subject to these statutes").  Moreover, the ADA and RA discrimination claims against Defendants Moores and McGrath in their official capacities are duplicative of the claims against DOCCS, and are therefore dismissed.  *See, e.g.*, *Cabassa*, 2013 WL 1183296, at *10 (citing *Hallet*, 109 F. Supp. 2d at 199-200); *Keitt*,

2015 WL 2383687, at *21.  The Court also dismisses the ADA discrimination claim against New

York State for the same reason.  *See Keitt*, 2015 WL 2383687, at *21.

   Defendants correctly state that for a plaintiff to prevail on an RA discrimination claim for

monetary damages against a state entity, the complaint must allege "intentional discrimination."

Dkt. No. 15-1 at 10; *see Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)

(quoting *Bartlett v. N.Y. State Bd. of L. Exam'rs*, 156 F.3d 321, 331 (2d Cir. 1998), *vacated on*

*other grounds*, 527 U.S. 1031 (1999)); *see also A.J.T. ex rel. A.T. v. Osseo Area Schs., Indep. Sch.*

*Dist. No. 279*, 605 U.S. 335, 344 (2025) ("To obtain compensatory damages [on an RA

discrimination claim], . . . courts of appeals generally agree that a plaintiff must show intentional

discrimination").  To plead intentional discrimination in the Second Circuit, a plaintiff must

identify a "'deliberate indifference to the strong likelihood [of] a violation[.]'"  *Loeffler*, 582 F.3d

at 275 (citation omitted).  This standard also applies to at least some Title II ADA discrimination

claims.[5]  *See Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 328-29 (N.D.N.Y. 2023)

(citation omitted).

   In the motion to dismiss, Defendants argue that Plaintiff failed to specify who made the

allegedly discriminatory determinations, as well as other facts that could support an inference of

intent.  *See* Dkt. No. 15-1 at 10-11.  Plaintiff must allege facts suggesting that "the 'indifference'

[was] 'so pervasive as to amount to a choice.'"  *Marshall v. N.Y. State Pub. High Sch. Athletic*

*Ass'n, Inc.*, 374 F. Supp. 3d 276, 300 (W.D.N.Y. 2019) (quoting *Loeffler*, 582 F.3d at 277).

---

[5] The Court recognizes that the Second Circuit previously raised the bar to require "proof of
discriminatory animus or ill will" in Title II ADA claims against states, *Garcia v. SUNY Health*
*Scis. Ctr. of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001), but that holding has since been challenged
in light of constitutional questions before the Supreme Court, *see, e.g.*, *Lalonde*, 662 F. Supp. 3d
at 328-29 (citing *Tennessee v. Lane*, 541 U.S. 509 (2004); *United States v. Georgia*, 546 U.S. 151
(2006)).

"'[N]egligence or bureaucratic inaction'" is insufficient. *Id.* at 299 (quoting *Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 657 (S.D.N.Y. 2017)).

The proposed amended complaint alleges that Defendants Story and Danzy personally authorized some of the challenged actions. *See* Dkt. No. 18-3 at ¶¶ 45, 49, 60-61. Although they are not listed as Defendants under the proposed amended discrimination claims, *see id.* at ¶¶ 90-100 (noting that the first claim is "[a]gainst Defendants McGrath, Moores, DOCCS and the State of New York," and the second claim is "[a]gainst Defendants McGrath, Moores, and DOCCS"), they work in the DOCCS Office of Classification and Movement, which Defendant McGrath oversees, *see id.* at ¶ 56. Looking strictly at the facial sufficiency of the proposed amended complaint, Plaintiff claims that DOCCS, through its employees, denied several of her transfer requests because of her medical needs. *See id.* at ¶¶ 4, 49, 61. Plaintiff alleges at least three denials of her placement requests between late 2023 and mid-2025, which, taken as true, supports an inference of pervasive indifference at the pleading stage. *See id.* at ¶¶ 4, 47-49, 60-61; *see also Caballero*, 349 F.R.D. at 54 (finding intentional discrimination where a DOCCS policy expressly disqualified the plaintiffs from a treatment and counseling program based on mental health status).

Defendants also argue that Plaintiff's ADA and RA discrimination claims should fail because she does not allege that she suffers from a qualifying disability. *See* Dkt. No. 15-1 at 16-17; Dkt. No. 19 at 5-10. Plaintiff argues that her "osteoarthritis and other impairments" are qualifying disabilities because, when left untreated, they can substantially limit patients' abilities to walk, stand, sit, reach, lift, bend, and work. Dkt. No. 18-1 at 24-26. Although Defendants acknowledge Plaintiff's claims of "chronic medical issues, including osteoarthritis, bone spurs[,] and venous stasis," as well as her use of a rolling walker, Dkt. No. 15-1 at 16, they argue that she

17

has not sufficiently pled those conditions' limitations on her daily activities, *see* Dkt. No. 19 at 5-6.

"The ADA and the Rehabilitation Act define a 'disability' as (A) 'a physical or mental impairment that substantially limits one or more major life activities of such an individual'; (B) 'a record of such an impairment'; or (C) 'being regarded as having such an impairment.'"[6] *Caballero*, 349 F.R.D. at 52-53 (quoting 42 U.S.C. § 12102(1); 29 U.S.C. § 705(9)(B)). Osteoarthritis is a recognized impairment under the ADA. *See Cody v. Cnty. of Nassau*, 577 F. Supp. 2d 623, 638 (E.D.N.Y. 2008) (citations omitted). However, "'[m]erely having an impairment does not make one disabled for purposes of the ADA.'" *Id.* (quoting *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 298 (S.D.N.Y. 2003)). Plaintiff must also allege that her disability substantially limits a major life activity, such as "'caring for [her]self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, [or] working.'" *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) (quoting 29 C.F.R. § 1630.2(i)).

Although Plaintiff's proposed amended complaint appears to downplay her disability in some places, *see, e.g.*, Dkt. No. 18-3 at ¶ 58 (stating that Plaintiff "had no acute medical needs" when she commenced this action), it clearly states that Plaintiff relies on a rolling walker to help her walk long distances, *see id.* at ¶¶ 36, 75. Walking is a major life activity, and Plaintiff's allegation that she uses a walker supports an inference that her disability substantially affects her daily activities. *See Cody*, 577 F. Supp. 2d at 638-39 (finding that the plaintiff demonstrated substantial limitation of daily activities because her osteoarthritis limited her ability to walk long distances, along with other impairments). Although Defendants argue that Plaintiff discusses her

---

[6] Plaintiff argues that she successfully alleges a qualifying disability under any of the three definitions. *See* Dkt. No. 18-1 at 24. Because the Court finds that Plaintiff alleges a qualifying disability under the first definition, it does not discuss the other two definitions.

disabilities in impermissibly general terms and fails to specify how they affect *her*, the Court finds that Plaintiff's allegations of mobility difficulty and use of a walker satisfy the pleading standard.

Because Plaintiff plausibly alleges that she suffers from a qualifying disability that substantially limits a major life activity, and that Defendants intentionally discriminated against her based on that disability, her discrimination claims survive dismissal. Defendants' motion is denied with respect to these claims.

**D.    ADA and RA Retaliation Claims**

Next, the proposed amended complaint enumerates two retaliation claims: one under Title V of the ADA against all Defendants (which the Court understands to include Story and Danzy), and one under § 504 of the RA against Defendants McGrath, Moores, and DOCCS. *See* Dkt. No. 18-3 at ¶¶ 101-05. Defendants argue that the claims must be dismissed because Plaintiff failed to exhaust her administrative remedies, or, in the alternative, fails to state a cause of action. *See* Dkt. No. 19 at 12-13, 15-17.

*1.    Failure to Exhaust Administrative Remedies*

Defendants predicate their exhaustion argument on the amount of time the exhaustion process is generally expected to take. *See* Dkt. No. 19 at 12-13, 13 n.2. Because Defendants raise this argument in their reply, Plaintiff has not responded to the exhaustion argument.

The Prison Litigation Reform Act ("PLRA") imposes an exhaustion requirement, which "'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Animashaun v. Toohill*, No. 9:21-CV-372, 2025 WL 843771, *2 (N.D.N.Y. Mar. 18, 2025) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). The PLRA exhaustion requirement applies to RA claims. *See*

*Carleton v. Annucci*, No. 9:17-CV-245, 2018 WL 7917921, *8 (N.D.N.Y. Nov. 21, 2018) (citations omitted), *R. & R. adopted*, 2019 WL 422530 (N.D.N.Y. Feb. 4, 2019).  Although exhaustion of administrative remedies is an affirmative defense and not a pleading requirement, "'a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement.'"  *Matagrano v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 9:19-CV-763, 2020 WL 7338586, *9 (N.D.N.Y. Dec. 14, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)).

In New York, to satisfy the exhaustion requirement, plaintiffs must utilize all three steps of the Incarcerated Grievance Program.  *See Animashaun*, 2025 WL 843771, at *3.  Defendants argue that Plaintiff could not have exhausted the process for her new claims, which are based on conduct that allegedly occurred between June 2025 and August 2025, before filing her original complaint in May 2025 or proposing an amended complaint in September 2025.  *See* Dkt. No. 19 at 12-13.

Because the newly alleged conduct occurred *after* the original complaint was filed on May 16, 2025, the Court applies this logic only to the proposed amended complaint, which was filed on September 17, 2025.  *See* Dkt. No. 18-3.  In support of their exhaustion defense, Defendants provided records from Bedford Hills regarding any grievances that Plaintiff filed there.  *See* Dkt. No. 19-1 at ¶¶ 3-5; Dkt. No. 19-2.  Based on this information, it appears that Plaintiff attempted to file multiple grievances, but there is no indication that the purported grievances properly commenced or progressed through the entire three-step process.  *See* Dkt. No. 19-2.

While Defendants may be correct about Plaintiff's failure to exhaust administrative remedies for some or all of her new claims, the Court acknowledges that Plaintiff was not

20

required to plead compliance with the PLRA's exhaustion requirement, *see Matagrano*, 2020 WL 7338586, at *9, and evidence of exhaustion may exist beyond what Defendants have provided. Thus, the Court considers alternative grounds for dismissal of Plaintiff's retaliation claims.

### 2. *Sovereign Immunity and Proper Defendants*

This Court has previously recognized that "private citizens cannot sue states or their agents in federal court for alleged . . . Title V ADA violations." *Koberger v. Cletus*, No. 1:24-CV-1496, 2025 WL 2223415, *4 (N.D.N.Y. Aug. 5, 2025) (citing *Dollinger v. N.Y. State Ins. Fund*, No. 3:14-CV-908, 2015 WL 8491013, *3 (N.D.N.Y. Dec. 10, 2015); *Yerdon v. Poitras*, 120 F.4th 1150, 1155 (2d Cir. 2024)). Furthermore, the Second Circuit has stated that "individual[s] cannot be held liable under the ADA's retaliation provisions." *Yerdon*, 120 F.4th at 1155 (citation omitted). The same is true under the RA, "'whether the [person] is sued in their official or individual capacity.'" *Lawrence v. Shattick*, No. 8:24-CV-656, 2025 WL 542587, *7 (N.D.N.Y. Feb. 19, 2025) (quoting *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022)). Thus, to the extent that Plaintiff sues New York State and its agents or employees under Title V of the ADA, or individual Defendants under the RA, those claims must be dismissed, and the proposed amendment is futile.

However, "[c]ourts have consistently found that New York has waived its sovereign immunity for claims brought pursuant to the Rehabilitation Act." *Koberger*, 2025 WL 2223415, at *5 (citing *Quadir v. N.Y. State Dep't of Lab.*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014)) (other citations omitted). The Court now addresses the facial sufficiency of Plaintiff's proposed RA retaliation claim against Defendant DOCCS.

### 3. *Failure to State a Cause of Action*

Courts use an identical standard for reviewing retaliation claims under the ADA and RA. *See Karam v. Cnty. of Rensselaer*, No. 1:13-CV-1018, 2016 WL 51252, *13 (N.D.N.Y. Jan. 4, 2016) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).  The elements for either claim are as follows: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal quotation marks omitted).  A plaintiff can allege a causal connection "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence[,] . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"  *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015)).

Filing a lawsuit is recognized as protected activity in the retaliation context.  *See Joseph's House & Shelter, Inc. v. City of Troy*, 641 F. Supp. 2d 154, 159 (N.D.N.Y. 2009).  Likewise, Defendants DOCCS, State of New York, Moores, and McGrath do not dispute their knowledge of the lawsuit as originally named Defendants, and the proposed amended complaint alleges that Defendants Story and Danzy learned about the lawsuit at some point after its filing.  *See* Dkt. No. 18-3 at ¶ 56.  Defendants argue that Plaintiff nevertheless failed to plead causation.  *See* Dkt. No. 19 at 16.

In the proposed amended complaint, Plaintiff points to "Defendants' adverse treatment . . . since the commencement of this action" as retaliatory conduct.  Dkt. No. 18-3 at ¶¶ 103, 105. However, Defendants argue in their reply that Plaintiff's proposed amended complaint fails to make "any non-conclusory allegations which would establish any link between the

commencement of her litigation and the conditions to which she claims to have been subjected." Dkt. No. 19 at 16. Plaintiff asserts in her cross-motion that "the fact that Defendants had previously placed [her] in an honor dorm and only removed her to a segregated medical unit after she commenced this lawsuit demonstrates a causal connection between the adverse action and her protected activity." Dkt. No. 18-1 at 14. In other words, Plaintiff appears to rely on the chronology and temporal proximity between the commencement of this lawsuit and Defendants' alleged retaliatory actions.

The Court recognizes that Defendant Danzy's alleged denial of Plaintiff's transfer to Taconic and Defendant Story's alleged authorization of Plaintiff's transfer to the RMU at Bedford Hills both occurred in June 2025, approximately one month after she filed her complaint. *See* Dkt. No. 18-3 at ¶¶ 60-61, 63. A temporal gap of one month between the protected activity and retaliatory act is "sufficient to give rise to an inference of causation." *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 324 (N.D.N.Y. 2013). Moreover, the proposed amended complaint alleges that, "[u]pon information and belief, Defendants Story and Danzy became aware of this lawsuit after it was filed." Dkt. No. 18-3 at ¶ 56. Although the proposed amended complaint does not explicitly state that Defendants Story and Danzy (who were not named in the original complaint) knew about the lawsuit at the precise time they allegedly retaliated against Plaintiff, the employment relationship between Story, Danzy, and McGrath—their supervisor and a Defendant named in the original complaint—supports an inference of knowledge at that time. *See Espinal v. Goord*, 558 F.3d 119, 130 (2d Cir. 2009) ("[I]t is a legitimate inference that Frasher, as a member of Green Haven's emergency response team with Surber on December 17, 1999, learned of the prior lawsuit from Surber, who was a defendant in the earlier lawsuit, or from other

officers aware of the lawsuit, and took action in response to Espinal's protected activity");

*Johnson v. Naqvi*, No. 3:18-CV-694, 2021 WL 1723773, *10-11 (D. Conn. Apr. 29, 2021).

Accordingly, Plaintiff's remaining proposed RA retaliation claim against Defendant

DOCCS survives dismissal.  Defendants' motion is denied as to that claim.

**E.    First Amendment Retaliation Claim**

Plaintiff's proposed amended complaint adds a First Amendment retaliation claim against

Defendants Story and Danzy pursuant to § 1983.  *See* Dkt. No. 18-3 at ¶¶ 108-09.  Plaintiff

alleges that Defendants Story and Danzy "subjected [her] to adverse action" by canceling her

transfer to general population at Taconic and relocating her from Albion to the RMU at Bedford

Hills.  *Id.* at ¶ 108.  According to Plaintiff, these actions were motivated by her constitutionally

protected commencement of this action.  *See id.* at ¶ 109.

To plead a *prima facie* First Amendment retaliation claim under § 1983, "a prisoner must

show . . . '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse

action against the plaintiff, and (3) that there was a causal connection between the protected

speech and the adverse action.'"  *Dowling v. Schleicher*, No. 9:17-CV-647, 2018 WL 4445112, *2

(N.D.N.Y. Sept. 18, 2018) (quoting *Espinal*, 558 F.3d at 128).  Courts consider a variety of

factors to determine causation in this context, such as temporal proximity between the protected

activity and the adverse action, the inmate's prior disciplinary record, and the defendant's

statements regarding motivation for the adverse action.  *See id.* (citation omitted).  "The causal

connection must be sufficient to support an inference that the protected conduct played a

substantial part in the adverse action."  *Cole v. N.Y. State Dep't of Corr. Servs.*, No. 9:10-CV-

1098, 2012 WL 4491825, *11 (N.D.N.Y. Aug. 31, 2012), *R. & R. adopted*, 2012 WL 4506010

(N.D.N.Y. Sept. 28, 2012) (internal quotation marks omitted).  In the prison context, the Second

Circuit has recognized that a temporal gap of several months can suggest a causal connection. *See id.* (quoting *Espinal*, 558 F.3d at 129). At the pleading stage of a retaliation claim, temporal proximity alone is enough to plead causation. *See Ziparo v. CSX Transp., Inc.*, 160 F.4th 314, 323-24, 335-36 (2d Cir. 2025); *Rivera v. JP Morgan Chase*, 815 Fed. Appx. 603, 608 (2d Cir. 2020) (summary order).

On this claim, Defendants argue that Plaintiff fails to plead the causation element. *See* Dkt. No. 19 at 16-17. As already discussed, Defendants Story and Danzy's challenged actions occurred in June 2025, about one month after Plaintiff commenced this action. *See* Dkt. No. 18-3 at ¶¶ 60-61, 63. Also, even though they were not named as Defendants in the original complaint, there exists a plausible inference that they were aware of the lawsuit because of their employment relationship with Defendant McGrath in the DOCCS Office of Classification and Movement. *See Espinal*, 558 F.3d at 130.

Therefore, Plaintiff has sufficiently stated a First Amendment retaliation claim. Defendants' motion is denied with respect to this claim.

## F.    Equal Protection Claim

Plaintiff's proposed amended complaint also enumerates an equal protection claim against Defendant Story. *See* Dkt. No. 18-3 at ¶¶ 106-07. Plaintiff points to Defendant Story's "repeated cancellations" of Plaintiff's transfer requests and her authorization of Plaintiff's transfer "to the RMU at Bedford Hills." *Id.*

Generally, to state an equal protection claim, a plaintiff must allege that they were treated differently from "'other similarly situated individuals[,] and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Terrill v.*

*Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 110 (N.D.N.Y. 2016) (quoting

*Miner v. Clinton Cnty.*, 541 F.3d 464, 474 (2d Cir. 2008)).  However, as Defendants correctly

point out, a disability is not recognized as such an impermissible consideration for equal

protection purposes.  *See* Dkt. No. 19 at 18; *Terrill*, 176 F. Supp. 3d at 110 (citing *Chick v. Cnty.

of Suffolk*, 546 Fed. Appx. 58, 60 (2d Cir. 2013) (summary order)).

      Alternatively, an equal protection plaintiff may proceed on a "class of one" theory by

alleging that: "(1) [she] has been intentionally treated differently from others similarly situated

and (2) there is no rational basis for the difference in treatment."  *Newman v. SUNY Broome*

*Cmty. Coll.*, No. 3:21-CV-199, 2021 WL 2820769, *4 (N.D.N.Y. July 6, 2021) (internal quotation

marks omitted); *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To make this

showing, a plaintiff must plead facts plausibly suggesting that no rational person could regard the

plaintiff's circumstances as so different from those of a similarly situated comparator that the

differential treatment would be justified.  *See Newman*, 2021 WL 2820769, at *4 (citations

omitted).  The plaintiff must also establish that the similarity in circumstances and differences in

treatment between the plaintiff and comparator "are sufficient to exclude the possibility that the

defendant acted on the basis of a mistake."  *Id.* (citations omitted).  Moreover, "'[c]lass-of-one

plaintiffs must show an extremely high degree of similarity between themselves and the persons

to whom they compare themselves.'"  *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55,

59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

      Plaintiff's equal protection claim fails because, aside from making broad allegations about

the differences between the conditions of general population and LTC, *see* Dkt. No. 18-3 at ¶¶ 77-

82, she does not allege that Defendants treated her differently from a similarly situated

comparator.  The proposed amended complaint does not mention any other incarcerated

individuals with disabilities or familial situations similar to Plaintiff's, or whose PMC transfer requests were granted.  Simply put, the proposed amended complaint provides no point of reference on which to base an equal protection claim.  Thus, the proposed equal protection claim is dismissed as futile.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 15) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff's cross-motion for leave to file an amended and supplemental complaint (Dkt. No. 18) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff's first (as asserted against Defendants McGrath, Moores, and the State of New York), second (as asserted against Defendants McGrath and Moores), third, fourth (as asserted against Defendants McGrath and Moores), and fifth claims are **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's first (as asserted against Defendant DOCCS), second (as asserted against Defendant DOCCS), fourth (as asserted against Defendant DOCCS), and sixth claims **SURVIVE** as pled in the proposed amended complaint; and the Court further

**ORDERS** that Plaintiff's claims for injunctive and declaratory relief, except as asserted against Defendant State of New York, **SURVIVE** as pled in the proposed amended complaint; and the Court further

**ORDERS** that Defendant State of New York is **DISMISSED** from this action; and the Court further

27

**ORDERS** that the proposed amended complaint (Dkt. No. 18-3), **as modified herein**, will supersede and replace the previously filed complaint and will be the operative pleading; and the Court further

**ORDERS** Plaintiff to file and serve upon all new and remaining Defendants, within **fourteen (14) days**, an amended complaint consistent with this Memorandum-Decision and Order;[7] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 27, 2026
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[7] The filed amended complaint must not include any new claims or allegations beyond what is stated in the proposed version already submitted to the Court.